```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EXELON GENERATION COMPANY, LLC,   :    CIVIL ACTION
          Plaintiff               :
                                  :
     v.                           :
                                  :
HOOSIER ENERGY RURAL ELECTRIC     :
COOPERATIVE, INC.,                :
          Defendant               :    NO. 04-4592
```

MEMORANDUM AND ORDER

McLaughlin, J.                                    September 26, 2005

On September 29, 2004 the plaintiff brought this action against Hoosier Energy Rural Electric Cooperative, Inc. ("Hoosier") for breach of contract and sought a declaratory judgment as to the parties' contractual obligations under two 1997 Unit Power Sales Agreements (the "Pennsylvania Action"). Two days later, on October 1, 2004, Hoosier brought an action against Exelon Generation Company, LLC ("Exelon") in Monroe County Circuit Court for breach of contract of the same two Unit Power Sales Agreements (the "Indiana Action"). Exelon removed Hoosier's state court action to the Southern District of Indiana on October 26, 2004. At issue in both the Pennsylvania Action and the Indiana Action is Exelon's responsibility to Hoosier for costs incurred by Hoosier in bringing its Indiana coal power plants into compliance with Indiana and federal regulations mandating lower nitrogen oxide emissions.

Hoosier has moved to dismiss the Pennsylvania Action for lack of personal jurisdiction or, in the alternative, to transfer it to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). In a separate motion, Exelon requested that this Court enjoin Hoosier from proceeding in the Indiana Action under the first-filed rule.

Having weighed all of the private and public factors set out in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995), the Court concludes that transfer is appropriate. The Court also concludes that the first-filed rule does not require a different result. The Court, therefore, will grant the defendant's motion to transfer and deny the plaintiff's motion to enjoin the Indiana action.

I.   Transfer Under 28 U.S.C. § 1404(a)

Section 1404(a) of Title 28 states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The party requesting the transfer has the burden of establishing that transfer is warranted. Jumara, 55 F.3d at 879. Courts consider private and public factors to determine the forum in which the interests of justice and convenience would best be served. Id. Private factors include: (1) the plaintiff's forum preference; (2) the defendant's

preference; (3) where the claim arose; (4) the relative physical and financial condition of the parties; (5) the extent to which witnesses may be unavailable for trial in one of the fora; and (6) the extent to which books and records could not be produced in one of the fora.  Id.

Public factors include: (1) the enforceability of a judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty resulting from court congestion; (4) the local interest in deciding the controversy; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879-80.

A.  Private Factors

1.  Plaintiff's Choice of Forum

The plaintiff's choice of forum weighs slightly against transfer.  When a plaintiff files in its home forum, as Exelon did here, that choice ordinarily is entitled to substantial deference.  FMC Corp. v. AMVAC Chem. Corp., No. 05-2593, 2005 U.S. Dist. LEXIS 15499, *49-50 (E.D. Pa. Aug. 1, 2005); Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578, 586 (E.D. Pa. 2005).  In this case, however, the operative facts occurred in Indiana and the plaintiff's forum choice, therefore, is entitled to less deference.  Gen. Fiber Commc'ns, Inc. v.

Barnes Wentworth, Inc., No. 03-3291, 2004 U.S. Dist. LEXIS 13640, *6 (E.D. Pa. May 28, 2004).

### 2. Defendant's Choice of Forum

The defendant's preference favors transfer.  Hoosier is based in Indiana and prefers to litigate this matter in the Southern District of Indiana.

### 3. Where the Claim Arose

Where the claim arose weighs strongly in favor of transfer.  This dispute is essentially a disagreement about the extent to which Exelon is responsible to Hoosier for costs incurred by Hoosier in bringing its Indiana power plants into compliance with Indiana and federal emissions standards.  Specifically, in 1998, the United States Environmental Protection Agency finalized a rule requiring several states, including Indiana, to reduce their nitrogen oxide emissions.  In response to the EPA rule, the State of Indiana promulgated rules requiring reductions of nitrogen oxide emissions from Indiana generators, including Hoosier.

In response to these federal and state rules, Hoosier began to study strategies to reduce the emissions from its Indiana generators.  The defendant decided to install selective catalytic reduction technology in two of its Indiana generating

units at a cost of approximately $73 million and then attempted to impose this cost increase on the plaintiff under the two 1997 Unit Power Sales Agreements. Exelon objected to paying the full cost of Hoosier's Indiana environmental compliance strategy and over the next four years the parties attempted to resolve the dispute informally. During this time, Exelon representatives traveled to Indiana, but Hoosier representatives never traveled to Pennsylvania.

The plaintiff argues that this dispute is best viewed as a Pennsylvania dispute because the 1997 agreements were partially negotiated in Pennsylvania and Exelon authorized payment under protest of the disputed cost increases in Pennsylvania. Although the two 1997 Unit Power Sales Agreements were negotiated in both Pennsylvania and Indiana, all of the performance under these contracts took place in Indiana. Hoosier generates the energy it supplies to Exelon exclusively in Indiana and title to that energy passes to Exelon in Indiana. Furthermore, all relevant efforts by Hoosier to comply with Indiana and federal regulations took place in Indiana.

### 4. The Convenience of the Parties

The convenience of the parties as indicated by their relative physical and financial condition is neutral. Exelon claims that it has overpaid under the two 1997 agreements and

Hoosier claims it is owed money under the same agreements. Either Exelon would incur additional expenses by litigating in Indiana, or Hoosier would incur additional expenses by litigating in Pennsylvania. Thus, the convenience factor does not weigh heavily in favor of either party.

    5. <u>Witness Availability</u>

Witness availability weighs in favor of transfer. The defendant has identified Hoosier's seventeen rural Indiana member distribution cooperatives as well as several state of Indiana employees who were involved with creating the Indiana regulations concerning nitrogen oxide and implementing the compliance schedule as non-party witnesses subject to the subpoena power of the Indiana court but not this one. Although, as the plaintiff argues, members of the Hoosier cooperative will likely be willing to attend trial in Pennsylvania to defend their interests, it is likely that the Indiana governmental employees would be unwilling or unable to travel to Pennsylvania and this weighs strongly in favor of transfer. Because this dispute deals in large measure with Hoosier's response to Indiana and federal emissions regulations, it is likely that the Indiana governmental officials will be able to offer relevant testimony at trial.

Witness availability has a lesser impact on the plaintiff. The plaintiff has identified only two non-party

witnesses who would be subject to this Court's subpoena power, Antonella Lynch and Christian Colton. Both these individuals are former Exelon employees who were involved in negotiating the two 1997 Unit Power Sales Agreements. The plaintiff did argue that these former employees "may be unavailable for trial in Indiana" but did not state why it might be inconvenient or impossible for its former employees, who were involved in negotiating the 1997 agreements with the Indiana based defendant, to travel to Indiana for trial.

### 6. The Books and Records

The books and records issue weighs in favor of transfer. Both parties are in possession of the relevant contractual documents. The defendant has identified additional documents, including documents related to its nitrogen oxide emissions studies and documents relating to the selective catalytic reduction technology used to reduce emissions that are located in Indiana. The plaintiff has not identified any records which are located exclusively in Pennsylvania.

The defendant also argues that it may introduce cumbersome pieces of equipment, such as the selective catalytic reduction filters it installed, which are located in Indiana. The plaintiff disputes the practicality and necessity of introducing this equipment into evidence. The Court will not

decide this dispute, but notes the possibility of introducing this Indiana based equipment into evidence favors transfer.

B. <u>Public Factors</u>

The public factors also favor transfer. Most of the public factors are neutral, but public factor four weighs in favor of transfer. The parties agreed in both 1997 Unit Power Sales Agreements that those agreements would be governed by Indiana law. The plaintiff argues that this dispute is simply a breach of contract action and thus the choice of Indiana law is not significant. However, in this case, not only are the relevant contracts governed by Indiana law, the dispute revolves primarily around actions taken by Hoosier in response to Indiana and federal emissions regulations. Because of the underlying issue in this case regarding the appropriateness of efforts taken by the defendant to comply with Indiana environmental regulations, Indiana has a strong local interest in deciding this dispute.

Additionally, public factor six weighs slightly in favor of transfer. Given the parties' choice of Indiana law as the governing law, and the presence of the Indiana environmental regulations, an Indiana court would likely be more familiar with the applicable state law than this Court.

II.  The First-Filed Rule

The plaintiff has argued that because the Pennsylvania Action was filed two days before the defendant filed the Indiana Action, the Court should apply the first-filed rule and enjoin the Indiana Action.

The first-filed rule gives a court the power to enjoin subsequent proceedings involving the same parties and issues already before another district court.  EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988).  The rule is grounded on equitable principles and its primary purpose is to avoid conflicting judgments and to avoid burdening the federal judiciary.  Id. at 977.  In this case, the Court has determined that transfer is appropriate under § 1404(a) and, therefore, there will be no risk of conflicting judgments.  Furthermore, the federal judiciary will not be burdened by having to consider identical issues in two separate courts.

If this Court were, after determining transfer is appropriate, to then rely on the first-filed rule and ultimately deny the defendant's transfer request, such a result would essentially punish the defendant for filing the Indiana Action.  Although the presence of the Indiana Action may not favor transfer, it would not be in the interests of justice to place the defendant in a worse position with respect to its transfer request because of the presence of the Indiana Action.

9

Other district courts in this circuit have reached similar conclusions and also stated that the first-filed rule does not apply when transfer is appropriate. See, e.g., Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 454 (D.N.J. 1999); Salperto v. Pohlad, No. 93-167, 1994 U.S. Dist. LEXIS 161, *16 (D. Del. Jan. 6, 1994); Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 487 (D.N.J. 1993). Such a result is especially appropriate in this case because the parties entered into a tolling agreement on July 27, 2004 to toll the applicable statute of limitations through October 1, 2004 so that settlement negotiations could continue. Prior to the expiration of that agreement, the plaintiff filed this action on September 29, 2004 and then two days later, on October 1, without knowledge of the plaintiff's filing, the defendant filed the Indiana Action.

The first-filed rule "is not a mandate directing wooden application." EEOC, 850 F.2d at 972. Instead, district courts have discretion under appropriate circumstances to depart from the rule. Id. The fact that this Court has found transfer to be appropriate under the Jumara factors, combined with the short time period between the filings, the presence of the tolling agreement and the defendant's lack of knowledge of the Pennsylvania Action, leads to the conclusion that a departure from the first-filed rule is justified in this case.

III.  <u>Personal Jurisdiction Over the Defendant</u>

Because the Court has found that the <u>Jumara</u> factors favor transfer, there is no need to reach the defendant's argument that personal jurisdiction does not exist in Pennsylvania.  Even if it would be improper for this Court to exercise personal jurisdiction over the defendant, transfer would still be appropriate under § 1404(a).  <u>United States v. Berkowitz</u>, 328 F.2d 358, 361 (3d Cir. 1964).

An appropriate Order follows.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EXELON GENERATION COMPANY, LLC,   :   CIVIL ACTION
          Plaintiff               :
                                  :
          v.                      :
                                  :
HOOSIER ENERGY RURAL ELECTRIC     :
COOPERATIVE, INC.,                :
          Defendant               :   NO. 04-4592
```

ORDER

AND NOW, this 26th day of September, 2005, upon consideration of the defendant's Motion to Dismiss or, in the Alternative, Transfer to the Southern District of Indiana (Docket No. 16), the plaintiff's opposition, and the defendant's reply, as well as the plaintiff's Motion to Enjoin Defendant from Proceeding in the Later-Filed Indiana Action (Docket No. 18), the defendant's response, and the plaintiff's reply, IT IS HEREBY ORDERED that for the reasons stated in a memorandum of this date:

1. The Motion to Dismiss or, in the Alternative, Transfer to the Southern District of Indiana is GRANTED IN PART AND DENIED IN PART. It is granted with respect to the defendant's request to transfer this action to the Southern District of Indiana; and denied as moot with respect to the defendant's request to dismiss for lack of personal jurisdiction.

      2.   The Motion to Enjoin Defendant from Proceeding in the Later-Filed Indiana Action is DENIED.

IT IS FURTHER ORDERED that this case shall be transferred to the United States District Court for the Southern District of Indiana.

                       BY THE COURT:

                       <u>/s/ Mary A. McLaughlin</u>
                       MARY A. McLAUGHLIN, J.